# United States Tax Court

T.C. Memo. 2023-139

ALLEN R. DAVISON AND SHARON L. DAVISON,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 13711-18L.                                  Filed November 20, 2023.

————————

Allen R. Davison and Sharon L. Davison, pro sese.

*Christina L. Holland* and *Martha J. Weber*, for respondent.

## MEMORANDUM OPINION

PARIS, *Judge*:  This case is before the Court on a Petition for review of Notices of Determination Concerning Collection Action(s) Under Section 6320[1] and/or 6330 and Abatement of Interest Under Section 6404 sustaining notices of intent to levy for petitioners' 2004 and 2005 tax years and sustaining the filing of Notices of Federal Tax Lien (NFTLs) for petitioners' 2004 and 2005 tax years (collectively, Notices). Respondent has moved for summary judgment on the grounds that the settlement officer did not abuse his discretion in sustaining the collection actions (Motion). For the reasons set forth below, the Court will grant respondent's Motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                *Background*

The following background is derived from the parties' pleadings, Motion papers, and accompanying Exhibits. It is stated only for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Petitioners resided in Kansas when they filed the Petition in this case. Petitioners were married during the tax years at issue and remained married through the time of the collection due process (CDP) hearings that gave rise to the Notices. They filed joint Forms 1040, U.S. Individual Income Tax Return, for the years at issue and all other tax years discussed herein.

I.      *Tax History*

        A.      *Individual Tax Liabilities*

Petitioners jointly filed their 2004 and 2005 federal income tax returns. On their 2004 tax return petitioners reported zero tax due on the basis of reported adjusted gross income of –$502,287 and claimed itemized deductions totaling $30,460. On Schedule E, Supplemental Income and Loss, petitioners reported a total net loss of $537,282 from 15 different passthrough entities.[2]

On their jointly filed 2005 tax return petitioners reported zero tax due on the basis of adjusted gross income of –$11,617 and claimed itemized deductions of $73,758. On Schedule E, petitioners reported a total net loss of $29,561 from 16 passthrough entities, including losses of $135,451 and $1,425 from Six-D, LLP.

Respondent examined petitioners' tax returns and determined deficiencies for 2001 through 2007. *See Davison v. Commissioner*, No. 23206-06 (T.C. Feb. 28, 2011) (relating to petitioners' 2001 and 2002 liabilities); *Davison v. Commissioner*, No. 25670-07 (T.C. Mar. 3, 2011) (relating to petitioners' 2003 and 2004 liabilities); *Davison v. Commissioner*, No. 2036-11 (T.C. Oct. 14, 2011) (relating to petitioners

---

[2] Of the entities reported on Schedule E of petitioners' 2004 and 2005 tax returns, those relevant to the resolution of this case include Cedar Valley Bird Co., LLP; Six-D, LLP; Six-D Partnership, LLP; TARD Properties, LLC; TARD Plus K Processing, Inc.; and DJAT Marketing, Inc. Despite the similarity in names, Six-D, LLP, and Six-D Partnership, LLP, are separate entities, each with its own EIN.

**[\*3]** 2005, 2006, and 2007 liabilities). Petitioners and respondent reached stipulated decisions[3] in each of the cases as follows:

|       | Docket No. | Deficiency | § 6662(a) Penalty | Date Decision Entered |
|-------|------------|------------|-------------------|-----------------------|
| 2001  | 23206-06   | —          | —                 | February 28, 2011     |
| 2002  | 23206-06   | $86,090    | $17,218.00        | February 28, 2011     |
| 2003  | 25670-07   | 57,427     | 11,485.40         | March 3, 2011         |
| 2004  | 25670-07   | 58,022     | 11,604.40         | March 3, 2011         |
| 2005  | 2036-11    | 90,240     | 18,048.00         | October 14, 2011      |
| 2006  | 2036-11    | 1,762      | 352.40            | October 14, 2011      |
| 2007  | 2036-11    | 379,489    | 75,897.88         | October 14, 2011      |

Petitioners' 2013 and 2014 tax years are also currently the subject of separate litigation before this Court. *See Davison v. Commissioner*, No. 180-19 (T.C. filed Jan. 28, 2019). In addition Mr. Davison has been assessed civil penalties pursuant to sections 6700, 6701, and 6707 for multiple periods. *See Davison v. Commissioner*, No. 25351-11L (T.C. Nov. 29, 2013) (relating to 1999 through 2008); *Davison v. Commissioner*, T.C. Memo. 2020-58 (relating to 2009 and 2010).

---

[3] In the case at Docket No. 25670-07, relating to petitioners' 2003 and 2004 liabilities, petitioners stipulated that "petitioners' partnership items relating to Cedar Valley Bird Company, LLP [an entity which, as discussed *infra*, was at that time subject to examination and litigation pursuant to the procedures set forth in sections 6221–6232], have been treated as if they were correctly reported on petitioners' federal income tax returns for the tax years 2003 and 2004 and they have not been adjusted as part of this docketed proceeding" and that "[t]o the extent that the computation of petitioners' tax liabilities which properly reflect the tax treatment of the partnership items relating to Cedar Valley Bird Company, LLP, as determined in the TEFRA partnership proceeding described [above] would also result in a change in petitioners' tax liabilities attributable to nonpartnership items, as previously determined in this docketed proceeding, such changes may be treated as a computational adjustment under IR.C. § 6231(a)(6) and assessed, credited, or refunded accordingly." Decision at 2–3, *Davison v. Commissioner*, No. 25670-07 (Mar. 3, 2011); *see also Munro v. Commissioner*, 92 T.C. 71 (1989).

[*4]  B.  *Cedar Valley Bird Co., LLP*

As noted above, during the years at issue, as well as subsequent years, petitioners held interests, either directly or indirectly, in numerous passthrough entities. Cedar Valley Bird Co., LLP (Cedar Valley Bird), is a TEFRA[4] partnership, and Six-D, LLP, was its tax matters partner. *See Cedar Valley Bird Co., LLP v. Commissioner*, T.C. Memo. 2013-153. All of Cedar Valley Bird's income and expenses flowed through to Six-D, LLP, in 2004. Mr. and Mrs. Davison, as cotrustees of the Sharon L. Davison Living Trust (Trust), held a 95% interest in Six-D, LLP, and Mr. Davison individually held another 1% interest.[5]

Respondent examined Cedar Valley Bird's Forms 1065, U.S. Return of Partnership Income, for 2004 and 2005, among other years, and determined adjustments to its income. Respondent determined an increase of $515,856 to its 2004 taxable income and issued a Final Partnership Administrative Adjustment (FPAA). Six-D, LLP, as tax matters partner, filed a petition in this Court in response to the 2004 adjustment, and the Court sustained the adjustment. *See Cedar Valley Bird*, T.C. Memo. 2013-153. Because of a systemic computer error, however, respondent did not assess the resulting flowthrough adjustments against petitioners within the period of limitations.

Respondent issued a separate FPAA with respect to Cedar Valley Bird's 2005 Form 1065, increasing its total income by $665,500. No petition was filed in response to the 2005 FPAA,[6] and as a result, respondent determined that 96% of the adjustment, or $638,879, flowed through to petitioners.

C.  *TARD Properties, LLC*

TARD Properties, LLC, was another TEFRA entity indirectly owned by petitioners. Respondent examined its 2005 Form 1065 and issued an FPAA, which was defaulted. *See Davison v. Commissioner*,

---

[4] Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402, 96 Stat. 324, 648.

[5] Petitioners' four children each held a 1% interest in Six-D, LLP. Petitioners reported 100% of the flowthrough amounts from Six-D, LLP, on their individual return for 2004. *Cedar Valley Bird*, T.C. Memo. 2013-153, at *3–4.

[6] According to IRS guidance, when no petition for readjustment is filed pursuant to section 6226(a) and (b), "the TEFRA case [i.e., the FPAA] is defaulted." *Internal Revenue Manual* 8.19.1.6.6.8.2.3 (Dec. 1, 2006); *see also Estate of Simon v. Commissioner*, T.C. Memo. 2013-174.

[*5] T.C. Memo. 2019-26, at *3, *aff'd per curiam*, 805 F. App'x 259 (5th Cir. 2020). The FPAA made adjustments to TARD Properties's taxable income totaling $50,000. Six-D Partnership, LLP, was a partner in TARD Properties during 2005, and petitioners were partners in Six-D Partnership, LLP. *See id.*

As a result of the adjustments to the incomes of Cedar Valley Bird and TARD Properties, which flowed through to petitioners, respondent determined a deficiency of $166,474 for petitioners' 2005 tax year, an addition to tax pursuant to section 6651(a)(1) of $41,618.50, and an accuracy-related penalty pursuant to section 6662 of $33,294.80. Respondent assessed these adjustments on August 15, 2011.

Following the adjustments to petitioners' 2005 taxable income in the individual deficiency case, Docket No. 2036-11, the TEFRA assessments were also increased. Respondent determined that petitioners owed additional tax of $81,998, plus an additional section 6651(a)(1) addition to tax of $198.75. Respondent assessed these additional TEFRA adjustments on or about November 4, 2013.

## II. *Amended Returns and Other Claims*

### A. *Amended Returns*

Respondent assessed the stipulated 2004 individual tax liability and penalty on June 6, 2011, and the stipulated 2005 individual tax liability and penalty on December 26, 2011. On or about November 15, 2012, petitioners submitted Forms 1040X, Amended U.S. Individual Income Tax Return, for tax years 2002, 2003, 2004, 2005, and 2007.[7] On the 2004 Form 1040X, petitioners claimed a reduction of their adjusted gross income of $245,696, reducing their total tax from the stipulated $58,022 to zero. In the Explanation of Changes, petitioners wrote: "[T]o adjust 2004 tax liability for net operating loss carryforward and carryback." Respondent did not process the Form 1040X, and petitioners resubmitted the Form 1040X on or about August 24, 2019.

---

[7] In February 2009 Congress passed the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, div. B, § 1211(a), 123 Stat. 115, 335, extending the carryback period for applicable 2008 net operating losses (NOLs) from 2 years to up to 5 years. In November of that same year, Congress enacted the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, § 13(a), 123 Stat. 2984, 2992, which extended the carryback period for 2008 or 2009 NOLs from 2 years to up to 5 years. In effect, both acts potentially reopened multiple tax years for adjustment to the tax years at issue.

**[\*6]** On the 2005 Form 1040X, petitioners claimed a reduction of their adjusted gross income of $406,900, reducing their total tax from the stipulated $90,240 to zero. In the Explanation of Changes, petitioners wrote: "Amended to reflect net operating loss adjustment." Respondent did not process the 2005 Form 1040X, and petitioners submitted another Form 1040X on October 1, 2013.

Petitioners took a similar approach on the Forms 1040X for tax years 2002, 2003, and 2007, zeroing out their taxable income and claiming no tax due.

B.     *NOL Carryback Abatement Made in 2014*

In the stipulated decision in the case at Docket No. 2036-11, petitioners and respondent stipulated a deficiency of $379,489 and an accuracy-related penalty of $75,897.88 for 2007.[8] The deficiency was based on a revised adjusted gross income of $1,366,545.52 and revised taxable income of $384,328.43, resulting in additional tax of $89,080 and alternative minimum tax of $290,409.04. Respondent assessed these amounts on February 6, 2012.

Between October 2012 and February 2014, petitioners submitted a series of Forms 1040X for tax year 2007. On each of these amended returns, petitioners asserted reductions in income tax and "other taxes" (i.e., alternative minimum tax) from the stipulated amounts to zero. On each of the Forms 1040X, petitioners claimed that the reduction in income resulted from an NOL carryback originating in tax year 2009. Petitioners additionally submitted letters alleging that there was an error in the computation of alternative minimum tax for 2007.

On May 19, 2014, after review, respondent made an abatement of petitioners' 2007 tax of $375,670, reducing the outstanding tax liability from $379,489 to $3,819. Following the abatement, petitioners submitted yet another Form 1040X for 2007, which matched the amount of the abatement issued by respondent.

---

[8] Petitioners take the position that the NOL carryback originating in tax year 2009 was not fully absorbed by the outstanding 2007 liability and remains available to offset the 2004 and 2005 liabilities. Petitioners' position is reviewed in greater detail *infra* pp. 11–12. Petitioners' position does not appear to take into account the stipulated decision in the case at Docket No. 2036-11, in which petitioners stipulated deficiencies for tax years 2005 through 2007, over and above the losses claimed on their returns. *See supra* Table p. 3.

[*7] III.    *Efforts to Collect Unpaid Tax*

A.    *Notices of Federal Tax Lien and Notices of Intent to Levy*

1.    *2004 CDP Hearing*

Petitioners did not pay the assessed tax liabilities after notice and demand for payment. On July 28, 2016, respondent issued to petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for the outstanding 2004 liability (2004 levy notice). On August 4, 2016, respondent filed an NFTL for the 2004 liability and issued to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing (2004 lien notice) on August 9, 2016. Petitioners timely filed Form 12153, Request for Collection Due Process Hearing (CDP Hearing Request), in response to the 2004 lien notice on August 12, 2016, and another CDP Hearing Request in response to the 2004 levy notice on August 22, 2016.

The two CDP Hearing Requests were nearly identical. In both requests petitioners asserted that they are challenging the proposed levy action and requested discharge or withdrawal of the lien. Petitioners did not request any other collection alternative but requested relief from joint and several liability pursuant to section 6015 (innocent spouse relief) for Mrs. Davison. Petitioners included an attachment to both forms, in which they additionally asserted that there is no tax due and requesting that the IRS adjust its records to reflect the Form 1040X submitted for 2004.

Petitioners' 2004 CDP Hearing Requests were assigned to Settlement Officer Marcus Morgan (SO Morgan) on September 6, 2016. SO Morgan determined that the CDP Hearing Requests were timely, verified the validity of the assessments, and sent petitioners a substantive contact letter scheduling a telephone hearing for October 17, 2016. In the letter SO Morgan additionally requested that petitioners provide a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, proof of current estimated tax payments, and their tax return for 2015.

SO Morgan held the telephone CDP hearing with Mr. Davison on October 17, 2016, during which petitioners raised the issue of the claimed NOL carryback. SO Morgan requested that petitioners submit their arguments to him in writing by October 31, 2016. He further advised that, if petitioners wished to have collection alternatives considered, they should provide a completed Form 433–A with

**[*8]** attachments, proof of current estimated tax payments, and their 2015 tax return by October 31, as well.

On November 1, 2016, SO Morgan received a packet of information from petitioners dated October 28, 2016, setting forth petitioners' position with respect to their outstanding liabilities. Specifically, petitioners alleged the following:

1. The taxpayers [sic] net operating loss (NOL) for 2005 in the amount of $58,022.00 plus accrued statutory interest. Through right of offset, seizure, garnishment, lien, levy or other collection tool available to the IRS take therefund [sic] in total and apply it to 2004 tax and interest owed.

2. Taxpayers will pay the penalty of $11,604.40 plus statutory interest as prescribed by the U.S. Tax Court.

3. Restricted interest rules should apply. See, research article enclosed.

4. No late filing penalties should apply. The 2004 tax return was timely filed.

5. The IRS would waive any late payment penalties. Taxpayers agree to pay applicable statutory interest.

6. Upon taxpayers settling the 2004 tax year to the satisfaction of the IRS, the federal tax liens would be discharged.

Petitioners did not provide a completed Form 433–A, nor did they provide documentation in support of their claimed NOLs. The packet did not contain a copy of petitioners' 2015 tax return, but SO Morgan confirmed that petitioners filed the return on October 15, 2016. No information was provided regarding petitioners' estimated tax payments.

**[\*9]**        2.        *2005 CDP Hearing*

On September 26, 2016, respondent issued to petitioners a levy notice for the outstanding 2005 liability.[9] Respondent filed an NFTL for the 2005 liability on September 30, 2016, and issued to petitioners a lien notice on October 6, 2016. Petitioners timely filed two separate but nearly identical CDP Hearing Requests in response to the 2005 levy notice on October 12, 2016, and another joint CDP Hearing Request in response to the 2005 lien notice on October 21, 2016.

As with the 2004 CDP Hearing Requests, the three 2005 CDP Hearing Requests were nearly identical in substance. On all three forms, petitioners requested discharge or withdrawal of the lien. On the two levy CDP Hearing Requests, petitioners requested an offer-in-compromise but no other collection alternatives. On the lien CDP Hearing Request and Mr. Davison's levy CDP Hearing Request, petitioners asserted that Mrs. Davison is entitled to innocent spouse relief. In the levy CDP Hearing Requests, petitioners included an attachment[10] in which they argued that their 2005 tax liability was eliminated by NOL carryback claims filed in 2011 and that there were numerous errors on their 2005 transcript, including the additional TEFRA assessments and late-payment penalties.

Petitioners' 2005 CDP Hearing Requests were initially assigned to Settlement Officer Martin Engelbrecht (SO Engelbrecht). SO Engelbrecht verified that the CDP Hearing Requests were timely, but while conducting his verification, he learned of petitioners' pending 2004 CDP hearing and transferred the 2005 matter to SO Morgan. SO Morgan confirmed that the 2005 CDP Hearing Requests were timely filed and began researching the 2005 assessments.

On October 24, 2016, while their 2005 CDP Hearing Requests were still under review, petitioners submitted another Form 1040X for 2005, labeled "Protective Claim." On this filing petitioners reduced their adjusted gross income by $329,695 to $144,653. After itemized deductions and exemptions, petitioners claimed their corrected taxable

---

[9] Petitioners' 2002 through 2007 tax years were the subject of a previous CDP hearing in 2012 and 2013 while petitioners' NOL claims were still under consideration. The IRS Office of Appeals (Appeals) determined not to sustain the proposed levy because petitioners' NOL claims were still under review. No determination with respect to petitioners' NOL claims was made at that time.

[10] The 2005 lien CDP Hearing Request included a note stating "see attached," but petitioners submitted no attachment with the form.

[*10] income was $64,495 and reduced their tax from $90,240 to $9,449 and eliminated the accuracy-related penalty. In the Explanation of Changes, petitioners stated as follows:

1. Protective claim to carry back 2010 net operating loss to 2005
2. Line 9 – No section 6662 penalty is included in 9(c) because amended tax liability is less than $10,000
3. Other carryback claims have been filed for the tax year 2005

By letter dated December 7, 2016, SO Morgan scheduled a telephone CDP hearing with petitioners for January 26, 2017. Petitioners did not call in to the hearing on January 26, but SO Morgan discussed the case with Mr. Davison by telephone on March 13, 2017. During that conversation SO Morgan advised Mr. Davison that an IRS Appeals officer would consider petitioners' NOL and interest abatement claims.

### 3. *Appeals Officer Review of NOL and Restricted Interest Claims*

Appeals Officer Richard Mrozek (AO Mrozek) was assigned to petitioners' case to review the NOL claims. AO Mrozek contacted Revenue Agent Michael Kostelnick (RA Kostelnick), who was examining petitioners' 2013 and 2014 tax returns, to discuss petitioners' NOL claims.[11]

RA Kostelnick reviewed petitioners' NOL claims in connection with his examination of petitioners' 2013 and 2014 tax returns. In considering petitioners' NOL claims, RA Kostelnick reviewed petitioners' Forms 1040X for tax years 2002 through 2007, the past Tax Court decisions relating to such years, and petitioners' tax returns for 2008 through 2012.

Petitioners provided RA Kostelnick with copies of their tax returns for 2004 through 2011 but did not provide copies of the NOL calculations. When RA Kostelnick requested documentation of their NOL calculations, petitioners provided a handwritten document detailing their taxable income from 2002 through 2012 and NOLs

---

[11] Petitioners' 2013 and 2014 tax years are currently the subject of a separate deficiency proceeding before this Court. *See Davison v. Commissioner*, No. 180-19.

**[\*11]** claimed to be available each year. The document did not identify the years in which the carrybacks and carryforwards originated.

RA Kostelnick reviewed petitioners' 2008, 2009, 2010, 2011, and 2012 tax returns, and accepted them as filed, subject to certain adjustments, as detailed below. On their joint 2008 return, petitioners reported adjusted gross income, less deductions, totaling –$469,045, resulting in zero tax due. Petitioners claimed an NOL carryforward of $570,624. Because petitioners had stipulated deficiencies for tax years 2002 through 2007, RA Kostelnick determined that there was no NOL carryforward to petitioners' 2008 return. Accordingly, petitioners' taxable income for 2008 was increased to $115,784.

On their joint 2009 return, petitioners reported adjusted gross income, less deductions, totaling –$707,878, resulting in zero tax due. Petitioners claimed an NOL carryforward of $444,164, resulting in a claimed NOL of $263,714. On Schedule E petitioners reported income and loss from several entities, including a nonpassive loss of $144,938 from DJAT Marketing, Inc., and a nonpassive loss of $249,447 from TARD Plus K Processing, Inc.[12] Petitioners attached to their return an election to carry the NOL back five years (i.e., to 2004), pursuant to section 172(b)(1)(H).

RA Kostelnick disallowed the claimed NOL carryforward of $444,164 because there were no losses from 2008 or earlier to carry forward. With respect to the claimed losses from TARD Plus K Processing and DJAT Marketing, petitioners provided RA Kostelnick with Schedules K–1 (Form 1120–S), Shareholder's Share of Income, Deductions, Credits, etc., as substantiation. RA Kostelnick issued multiple requests for documentation to substantiate petitioners' claimed bases in the two entities; petitioners provided copies of promissory notes between the Trust and the two entities but did not provide copies of canceled checks or other evidence that the funds were actually contributed. RA Kostelnick therefore disallowed the claimed losses. As a result of these adjustments, as well as an allowance of an additional deduction for charitable contributions of $3,375, RA Kostelnick determined that petitioners' corrected taxable income for 2009 was $119,996 and thus, no NOL was available to carryback to 2004.

---

[12] During all relevant years, DJAT Marketing and TARD Plus K Processing elected to be treated as S corporations for federal income tax purposes. *See* §§ 1361 and 1362.

**[\*12]** On their joint 2010 Form 1040, petitioners reported adjusted gross income, less deductions, totaling –$1,023,834, resulting in zero tax due. Petitioners claimed an NOL deduction of $694,139, resulting in a claimed NOL of $329,695 available for carryback, which RA Kostelnick allowed. RA Kostelnick further determined that petitioners were entitled to an additional flowthrough loss of $10,858 from Terra Bioenergy, LLC.[13] Of the reported NOL, $100,906 arose from farming losses reported on Schedule E and were eligible to be carried back five years (i.e., to 2005). The NOL carryback to 2005 resulted in an abatement of tax of $36,104 and a reduction in penalty of $8,664.96, which respondent applied against petitioners' account on July 9, 2018. The abatement reduced petitioners' 2005 tax liability from $90,240 to $54,136. RA Kostelnick applied the remaining NOL to petitioners' 2008 and 2009 tax years.

AO Mrozek reviewed and accepted RA Kostelnick's conclusions with respect to the NOL analysis, verified the 2005 TEFRA assessments, and considered the other substantive issues petitioners raised. On April 17, 2018, he returned the case to SO Morgan. By letter dated April 30, 2018, SO Morgan explained that petitioners were entitled to an abatement of tax of $36,104 as a result of the 2010 NOL carryback, and provided petitioners with another opportunity to submit a completed Form 433–A along with supporting documentation by May 18, 2018, in order for SO Morgan to consider collection alternatives. Petitioners failed to provide the requested materials.

### B.    *Notices of Determination*

On June 20, 2018, respondent issued four separate Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to each petitioner. The Notices for the 2004 lien and levy determined that Mrs. Davison was not entitled to innocent spouse relief; petitioners were not entitled to lien withdrawal or discharge, and no other collection alternatives were requested; petitioners' NOL carryback claim was denied; petitioners' request for abatement of late-filing

---

[13] RA Kostelnick made further adjustments to petitioners' 2011 and 2012 tax years related to the disallowed NOLs and losses from Terra Bioenergy. These adjustments are not relevant to petitioners' 2004 or 2005 tax year, and the Court will not further address them.

**[\*13]** penalties was denied because none was assessed; and petitioners' request for interest abatement[14] was denied.

The Notices for the 2005 lien and levy determined that Mrs. Davison was not entitled to innocent spouse relief; petitioners were not entitled to lien withdrawal or discharge, and no other collection alternatives were requested; petitioners' NOL loss carryback claim was granted in part and denied in part; petitioners were not entitled to abatement of late-payment penalties; and petitioners' request for interest abatement was allowed in part. *See supra* note 13.

Petitioners timely filed the Petition in this case, disputing the Notices. In the Petition, they raised numerous claims relating to their 2004 and 2005 tax years, as well as their liabilities for other years. With respect to their underlying tax liabilities, petitioners allege that respondent failed to give credit for claimed NOL carrybacks and carryforwards; that the adjustments to the income of Cedar Valley Bird for 2002, 2003, and 2004 were "timing adjustments" that created a "reversing deduction in tax year 2005," which respondent failed to consider; that respondent did not consider a flock contract deduction of $625,000 for tax year 2005; and that respondent improperly disallowed shareholder loans in their tax bases for TARD Plus K Processing and DJAT Marketing for 2009.[15] Petitioners additionally claim that respondent failed to apply the restricted interest rules to the NOL carrybacks; that they are entitled to an abatement of interest; and that Mrs. Davison is entitled to relief from joint and several liability pursuant to section 6015.[16] Finally, petitioners assert that the burden of proof should shift to respondent pursuant to section 7491(a).

---

[14] Petitioners did not request interest abatement pursuant to section 6404 for either year. Rather, they requested application of the restricted interest rules of section 6601(d)(1) in connection with their claimed NOLs. SO Morgan erroneously referred to petitioners' claim as a request for abatement of interest.

[15] Petitioners additionally claimed that respondent erred in calculating their 2007 alternative minimum tax; that suspended losses from Terra Bioenergy were not allowed; and that respondent failed to consider certain offsets related to indemnification payments received from Grant Thornton in 2014. These issues are not relevant to petitioners' CDP hearing for their 2004 and 2005 liabilities, and the Court will not further address them.

[16] By Order dated September 8, 2023, the Court granted respondent's Motion in part, ruling that petitioners' claim that Mrs. Davison is entitled to innocent spouse relief was barred by the doctrine of res judicata. In the stipulated decisions resolving

**[\*14]** Respondent has moved for summary judgment on the grounds that SO Morgan correctly determined petitioners' liabilities and did not abuse his discretion in sustaining the collection actions.

*Discussion*

I.  *Summary Judgment*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute of material fact, and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. *FPL Grp., Inc. & Subs. v. Commissioner*, 115 T.C. 554, 559 (2000). Where the moving party properly makes and supports a motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials in their pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Loube v. Commissioner*, T.C. Memo. 2020-3, at \*10–11. In deciding whether to grant summary judgment, the Court construes factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Loube*, T.C. Memo. 2020-3, at \*11.

II.  *CDP*

A.  *Statutory Framework*

Section 6331(a) authorizes the Secretary to levy against property and property rights where a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) requires the Secretary to send the taxpayer written notice of the Secretary's intent to levy, and section 6330(a) requires the Secretary to send the taxpayer notice of the right to a section 6330 hearing at least 30 days before any levy is begun.

---

petitioners' deficiencies for 2004 and 2005, the parties specifically stipulated that Mrs. Davison was not entitled to innocent spouse relief. The evidence showed that Mrs. Davison received income that gave rise to the deficiencies, was involved in the business activities, and meaningfully participated in the prior cases. The Court will not further address this issue.

**[\*15]** Section 6321 imposes a lien for unpaid federal taxes. The lien arises when an assessment is made. § 6322. Section 6323 provides that the lien imposed by section 6321 is not valid against certain persons until notice thereof is filed in accordance with rules provided. Section 6320(a) provides that, after the Secretary has filed the required notice, the Secretary must notify the taxpayer of the fact of the filing. A taxpayer receiving a notice of NFTL filing has hearing rights similar to the hearing rights accorded a taxpayer receiving a notice of intent to levy. *See* § 6320(c).

If a CDP hearing is requested pursuant to section 6320 or 6330, the hearing is to be conducted by Appeals to determine whether to sustain the proposed collection action. In making that determination, section 6330(c)(3) requires the Appeals officer to consider (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Once an Appeals officer makes a determination, the taxpayer may appeal that determination to this Court. § 6330(d)(1).

B.    *Standard of Review*

The Court has jurisdiction to review a determination by Appeals pursuant to sections 6320(c) and 6330(d)(1). Where the underlying liability was not properly at issue, the Court will review Appeals' determination for an abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). An abuse of discretion occurs if the Appeals officer or employee conducting the hearing exercises his discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999); *see also Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007).

A taxpayer may challenge the underlying liability at a CDP hearing if he did not receive a statutory notice of deficiency for that liability or did not otherwise have a prior opportunity to dispute it. § 6330(c)(2)(B). Where the underlying liability was properly at issue in the CDP hearing, the Court will review the liability issue de novo and the other administrative determinations for an abuse of discretion. *Craig v. Commissioner*, 119 T.C. 252, 260 (2002). Under the de novo standard of review, the Court is not limited by the administrative record, but considers all relevant evidence introduced by the parties.

**[\*16]** *Jordan v. Commissioner*, 134 T.C. 1 (2010), *supplemented by* T.C. Memo. 2011-243.

The liabilities at issue in this case arose in connection with petitioners' stipulated decisions in their earlier deficiency cases. Petitioners had a prior opportunity to challenge those liabilities and, accordingly, may not challenge them here. Petitioners allege, however, that NOL carrybacks from subsequent tax years, including 2009 and 2010, affect the outstanding liabilities for the years subject to the collection proceedings. In such cases an exception to the general prohibition on challenging the underlying liabilities exists with respect to NOL carrybacks, and a taxpayer is entitled to assert NOLs in a CDP hearing after prior deficiency litigation. *See Ron Lykins, Inc. v. Commissioner*, 133 T.C. 87, 106–11 (2009); *see also Laidlaws Harley Davison Sales, Inc. v. Commissioner*, T.C. Memo. 2023-90, at \*9–10. Moreover, in any case where a taxpayer claims an NOL carryforward or carryback deduction, the Court has jurisdiction to consider facts related to years not in issue as may be necessary for redetermination of tax liability for the period before the Court. *Amanda Iris Gluck Irrevocable Tr. v. Commissioner*, 154 T.C. 259, 269 (2020); *Keith v. Commissioner*, 115 T.C. 605, 621 (2000).

Accordingly, the Court reviews petitioners' NOL claims de novo and remaining administrative determinations for abuse of discretion.

III.   *Section 7491(a)*

Under section 7491(a)(1), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue relevant to ascertaining the liability of a taxpayer for any tax imposed by subtitle A or B and satisfies the requirements of section 7491(a)(2). Section 7491(a)(2) requires a taxpayer to demonstrate that he (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. *See also Higbee v. Commissioner*, 116 T.C. 438, 440–41 (2001). The burden is on the taxpayer to show that he has satisfied these requirements. *See Richardson v. Commissioner*, T.C. Memo. 2005-143.

Petitioners allege in the Petition and in their Reply that the burden of proof should shift to respondent pursuant to section 7491(a). Section 7491(a) applies only to the burden of proof with respect to a tax

**[\*17]** liability imposed by subtitle A or B and does not shift the burden of proof with respect to petitioners' claims for interest abatement, restricted interest, or respondent's determination to proceed with the collection action. *See also Kansky v. Commissioner*, T.C. Memo. 2007-40. Accordingly, the Court understands petitioners' invocation of section 7491(a) to be limited to the question of their underlying tax liability.

Petitioners have not demonstrated that they are entitled to a shift in the burden of proof. They do not provide any argument or evidence in support of their argument. Petitioners have not produced credible evidence with respect to their NOL claims; they have not shown that they have complied with all of the substantiation requirements of the Code; and they have not cooperated with respondent's requests for information or documents. Indeed, petitioners refused to comply with respondent's informal discovery attempts, leading respondent to issue formal interrogatories and document requests. Accordingly, the burden of proof remains with petitioners.

IV.    *Analysis*

    A.    *Verification*

Section 6330(c)(1) requires that the Appeals officer conducting the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been followed. The Court's review of the administrative file establishes that SO Morgan verified that the assessments were proper, notice and demand was issued to petitioners' last known address, a balance was due when the NFTL was filed, and that he had no prior involvement with respect to the tax period at issue. The record establishes that the verification requirement has been satisfied.

    B.    *Challenges to Underlying Liability*

        1.    *NOLs*

            a.    *Legal Principles*

Section 172(a) allows a taxpayer to deduct NOLs for a taxable year. The amount of the NOL deduction equals the aggregate of the NOL carryovers and NOL carrybacks to the taxable year. *See* § 172(a). Section 172(c) defines an NOL as the excess of deductions over gross income, computed with certain modifications specified in section 172(d).

**[\*18]** An unused NOL is "carried to the earliest of the taxable years to which . . . such loss may be carried." § 172(b)(2). Any excess NOL that is not applied in one year is carried to the next earlier year. *See* § 172(b)(2). Absent an election under section 172(b)(3), an NOL for any taxable year must be carried back to the two preceding years and then carried forward over the next 20 years. § 172(b)(1)(A), (2), (3). Section 172(b)(1)(G) provides for an NOL carryback period of 5 taxable years in the case of a taxpayer which has a farming loss.

For taxable years ending after December 31, 2007, and beginning before January 1, 2010, the carryback period for certain NOLs was increased to three, four, or five years. § 172(b)(1)(H). The election under section 172(b)(1)(H) must be made in a manner prescribed by the Secretary and must be made by the due date (including extensions) for filing the return for the taxpayer's last taxable year beginning in 2009. § 172(b)(1)(H)(iii)(II).

A taxpayer who claims an NOL deduction bears the burden of establishing both the existence of the NOL and the amount that may be carried over to the year involved. *See* Rule 142(a); *Keith*, 115 T.C. at 621.

b.      *Cedar Valley Bird*

Petitioners claim that they are entitled to NOL carrybacks and carryforwards that would effectively eliminate their 2004 and 2005 tax liabilities (as well as their liabilities for other years not at issue in this case). Petitioners cite their various claims filed with the IRS, as well as text in a fax from an IRS Appeals officer in support of their position.

Petitioners have not presented any records or other evidence in substantiation of their NOL claims. Petitioners submitted amended 2004 and 2005 returns in November 2012 and an amended 2005 return in October 2016 and resubmitted the amended returns during their CDP hearing and respondent's examination for their 2013 and 2014 tax years. Tax returns merely represent statements of a taxpayer's position and cannot be used to substantiate a claimed NOL. *See, e.g., Benavides & Co., P.C. v. Commissioner*, T.C. Memo. 2019-115, at \*17.

Petitioners additionally point to a fax from Appeals dated July 25, 2011, sent during the course of resolving their 2005, 2006, and 2007 tax liabilities. The fax reads as follows:

See the attached Summary of the Settlement proposal that we are working on. After reviewing the records and the

**[\*19]** Six D Report I have adjusted your proposed settlement per the attached summary. With regards to the NOL deduction. [sic]. Any NOLs generated in the 2002 or 2003 docketed Cedar Valley resolution will offset the current years income then should be carried back. There is no immediate carryforward of an NOL available for 2005, 2006, or 2007. After the computations are completed on the 2005–2007 tax years, any resulting 2005 or 2006 NOL would have to be carried back. Even though the prior years have been resolved, any NOL generated in the current years before us could still be carried back. Once we get the final computations, you may consider filing a claim as part of your settlement. I have also attached S-D Enterprises report and the defaulted FPAA for T.A.R.D. Business Trust.

At the time this fax was sent, Cedar Valley Bird's 2002 and 2003 tax case had not been resolved. The Appeals officer phrased the proposal in the conditional, leaving open the possibility of applying NOLs, should any losses exist. The Court issued its opinion in *Cedar Valley Bird*, T.C. Memo. 2013-153, on June 19, 2013, finding deficiencies in Cedar Valley Bird's income. In other words, no losses existed to carry forward to 2005.

Petitioners next claim that the adjustments to Cedar Valley Bird's income were merely "timing adjustments" that should have given rise to a commensurate "reversing deduction" in 2005. Petitioners' position ignores or misrepresents the Court's decision in *Cedar Valley Bird*. In that case the Court sustained adjustments to Cedar Valley Bird's income and expenses on the basis of the taxpayer's failure to substantiate alleged loan guaranties related to flock contracts, as well as certain other claimed deductions and costs of goods sold.[17]

      c.     *TARD Plus K Processing and DJAT Marketing*

Petitioners additionally dispute respondent's disallowance of Schedule E losses claimed on petitioners' 2009 return and carried back to petitioners' 2004 tax year. Respondent disallowed the claimed losses

---

[17] As discussed *supra*, respondent failed to assess against petitioners the TEFRA adjustments resulting from *Cedar Valley Bird*. Even if petitioners' characterization of the adjustments as "timing adjustment" were correct, it would be inappropriate for petitioners to claim the deduction for 2005 while not recognizing as income the items that gave rise to the adjustments.

[*20] from TARD Plus K Processing and DJAT Marketing on the grounds that petitioners did not substantiate their basis in either entity. Petitioners provided evidence of promissory notes between the Trust and each of the entities, all of which are controlled by petitioners, but did not provide copies of canceled checks or other evidence that the funds were actually paid. In their Reply, petitioners once again provided copies of the promissory notes (signed by Mr. Davison on behalf of both parties to the respective note) but offer no evidence that the funds were actually transferred. In fact, petitioners do not even address respondent's arguments regarding lack of substantiation. The Court concludes that petitioners failed to substantiate their bases in TARD Plus K Processing and DJAT Marketing and, accordingly, are not entitled to the loss deductions claimed on their 2009 return.

### d. *Conclusion*

Respondent allowed petitioners' NOL claims to the extent that they were substantiated. Specifically, respondent allowed a 2010 NOL carryback of $100,906 to petitioners' 2005 tax year, resulting in an abatement of tax of $36,104 and a reduction of $8,664.96 in petitioners' late-payment penalty. Petitioners have not shown any dispute as to any specific material fact regarding their entitlement to any further NOLs, resting only on allegations in the Petition and their Reply.

### 2. *Flock Contract Deduction*

In the Petition, petitioners allege that "[a] flock contract deduction of $625,000 was not considered by the Respondent for tax year 2005." This issue is unrelated to the claimed NOLs, and petitioners are precluded from raising it in this proceeding. *See* § 6330(c)(2)(B). Moreover, petitioners did not raise this issue during their CDP hearing, and they may not do so now. *See Giamelli*, 129 T.C. at 114. Further, petitioners have not provided any arguments or evidence in support of the deduction. It is not even clear whether petitioners are claiming this deduction for themselves individually or for Cedar Valley Bird. The Court will not allow the deduction.

### C. *Application of Restricted Interest Rules*

Interest on a federal income tax liability generally begins to accrue from the last date prescribed for payment of that tax and continues to accrue, compounding daily, until payment is made. *See* §§ 6601(a), 6622. In the case of an income tax deficiency that is later reduced by the carryback of an NOL, section 6601(d)(1) authorizes the

**[\*21]** Commissioner to collect deficiency interest from taxpayers such as petitioners whose deficiencies are eliminated by NOL carrybacks. Section 6601(d)(1), which codifies the principle announced in *Manning v. Seeley Tube & Box Co. of N.J.*, 338 U.S. 561 (1950), that a taxpayer is liable for interest on a deficiency until the deficiency is paid or otherwise abated, provides that a reduction in tax by reason of a carryback of an NOL does not affect the computation of statutory interest due for the period ending with the filing date for the taxable year in which the NOL arose. *See also Urbano v. Commissioner*, 122 T.C. 384, 394–95 (2004).

Petitioners allege in the Petition that respondent failed to consider the so-called restricted interest rules of section 6601(d)(1) as applied to the NOL carrybacks. This claim is without merit. The 2005 abatement of tax, which arose from the carryback of petitioners' 2010 NOL, is the only transaction to which the restricted interest rules apply in this case. When submitting Form 5403, Instructions to APS, in connection with the 2005 abatement, respondent indicated that section 6601(d)(1) applies by checking "yes" to the question "Restricted Interest Applies" and attaching Form 2285, Restricted Interest Worksheet. Nothing in the record indicates that respondent has not applied the restricted interest rules or otherwise abused his discretion with respect to this issue.

D.    *Abatement of Interest*

Section 6404(e)(1)(A) authorizes the Commissioner to abate an assessment of interest on "any deficiency attributable . . . to any unreasonable error or delay by an officer or employee of the Internal Revenue Service . . . in performing a ministerial or managerial act."

Petitioners allege that they are entitled to interest abatement and that respondent did not consider this issue. Petitioners did not raise the issue of interest abatement in their CDP Hearing Requests, nor at any point during their CDP hearing.[18] As this issue was not raised in the CDP hearing, the Court does not consider it. *See Giamelli*, 129 T.C. at 114.

---

[18] In the Notices SO Morgan erroneously refers to petitioners' request to apply the restricted interest rules as a claim for interest abatement. He states that the interest abatement claim was denied for 2004 and partially allowed for 2005.

**[\*22]** E.    *Collection Alternatives*

On their 2005 levy CDP Hearing Requests, petitioners requested an offer-in-compromise, and on all of their CDP Hearing Requests they requested discharge or withdrawal of the NFTLs. Petitioners did not provide a completed Form 433–A or other materials that would assist the Appeals officer in determining petitioners' reasonable collection potential. Petitioners did not advance any arguments or present any evidence that they met requirements for lien discharge or withdrawal. SO Morgan did not abuse his discretion in denying petitioners' requests. Petitioners did not request any other collection alternatives.

F.    *Balancing of Interests*

Section 6330(c)(3)(C) requires that the Appeals officer consider whether the proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of the taxpayers that any collection action be no more intrusive than necessary. SO Morgan considered the proposed collection actions, petitioners' outstanding balances, and their failure to substantiate their inability to pay and concluded that the lien and levy actions were no more intrusive than necessary. The record supports SO Morgan's conclusion, and the Court concludes that he did not abuse his discretion.[19]

---

[19] On October 27, 2023, petitioners lodged their First Supplemental Amendment to Reply to Motion for Summary Judgment (Amendment). Although petitioners' Amendment was submitted out of time and without permission from the Court, the Court will briefly address petitioners' arguments here.

Petitioners contend that the so-called major question doctrine, as discussed in the recent decision by the U.S. Supreme Court in *West Virginia v. EPA*, 142 S. Ct. 2587, 2607–10 (2022), somehow precludes respondent from making the determination in this case and that the IRS is acting outside of its statutory authority in denying the NOL claims. Petitioners misread *West Virginia*, and Congress clearly authorized the Commissioner's collection authority under chapter 64 of the Code. Moreover, as discussed at length *supra*, respondent reviewed petitioners' NOL claims and allowed the NOL carrybacks to the extent that petitioners substantiated them.

Petitioners also argue that section 6502(a) bars collection of the liabilities at issue because more than ten years have passed since they were assessed at various points in 2011. Petitioners did not raise this issue during their CDP hearing and are not entitled to raise it at this time. *See Giamelli*, 129 T.C. at 114. The Court notes, first, that respondent's assessments of 2005 tax continued into 2013. Moreover, petitioners' argument ignores section 6330(e)(1), which suspends the running of the period of limitations for the period during which a CDP hearing and appeals are pending. Petitioners filed their CDP Hearing Requests on August 12, 2016, in response

**[\*23]** V.     *Conclusion*

SO Morgan gave due consideration to all issues raised by petitioners in their CDP Hearing Requests, including a detailed analysis of petitioners' claimed NOL carrybacks. The Court has reviewed respondent's Motion, petitioners' Reply, the administrative file, and all supporting documentation and concludes that there is no issue of material fact with respect to the outstanding balance or respondent's determinations. The Court will grant respondent's Motion and sustain the collection actions set forth in the Notices.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

to the 2004 lien notice; August 22, 2016, in response to the 2004 levy notice; October 12, 2016, in response to the 2005 levy notice; and October 21, 2016, in response to the 2005 lien notice. Pursuant to section 6330(e)(1), the statute of limitations on collection has been suspended since those dates and, accordingly, remains open.

The remaining issues raised in the Amendment are simply a rehash or slight variation of those arguments raised in the Petition or in petitioners' Reply, and the Court has addressed them *supra*.